UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| C.K. and J.K. as next friends of the minor child A.K., et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 11-296-ART |
| v. | ) ) ) | **MEMORANDUM** |
| BELL COUNTY BOARD OF EDUCATION, et al., | ) ) ) | **OPINION &ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Journalists investigating a story know they need to cover the five "W's": who, what, when, where, and how?  Plaintiffs C.K. and J.K. have started asking these questions about the sexual abuse that their son A.K. suffered at the hands of Bell County substitute teacher Travis Phipps.  But they are not yet finished.  Although the Bell County Board of Education ("the Board") is entitled to summary judgment on the plaintiffs' civil conspiracy and state-law negligence claims, the plaintiffs may still uncover genuine issues of material fact on their § 1983 and Title IX claims.  The Court therefore grants in part and denies in part the Board's motion.

**BACKGROUND**

In 2003, A.K. was an eight-year-old boy attending third grade at Frakes Elementary School in Bell County, Kentucky.[1]  At some point that year, A.K.'s substitute teacher, Defendant Travis Phipps, sexually assaulted him in one of the school's bathrooms.  Phipps

---

[1] The parties dispute many of the facts in this case, but for the purpose of summary judgment, the Court must draw all reasonable inferences and view all facts in the light most favorable to the plaintiffs.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

threatened to harm A.K. if he told anyone what happened, and Phipps abused A.K. again later that year.  A.K. did not tell anyone, including his parents, what happened, but other teachers noticed that he became more distant and withdrawn.

The same year, other Frakes parents complained to the school's principal, Defendant Patricia Howard, about the way Phipps treated his students.  According to these complaints, Phipps yelled at and intimidated the children in his class, and he would frequently place students on his lap.

Phipps provoked another, more serious complaint in September 2004.  A student at Bell Central Middle School somehow obtained Phipps's camera phone and found a picture of a naked male on it.  That student gave the phone to his parents, who then contacted Greg Wilson, the new principal of Frakes, as well as Defendant George Thompson, the superintendant of Bell County Schools.  Thompson investigated the allegations and found that Phipps "did, in fact, bring inappropriate material to school or onto school property." R. 93-3.  As punishment, Thompson reprimanded Phipps and ordered the letter of reprimand to stay in Phipps's personnel file for a year.  *Id.*

In 2010, A.K. told his parents that he had been abused by a teacher when he was in the third grade.  Mental health professionals diagnosed A.K. with post-traumatic stress disorder.  Through counseling, A.K. eventually revealed that a tall man with curly hair had abused him.  That description matched Phipps.  C.K. and J.K., the parents of A.K., met with Thompson and told him about Phipps's behavior.  According to the plaintiffs, Thompson said that he could not remove Phipps from his teaching assignment because he feared that Phipps might sue the school system.  Compl., R. 1 ¶ 37.

When Thompson failed to act, A.K.'s mental health counselor contacted the Kentucky State Police and the Kentucky Cabinet for Health and Family Services ("Family Services"). In March 2011, Family Services substantiated the allegations against Phipps, finding that A.K. made "credible and consistent statements" about the abuse. Investigation Notification Letter, R. 1-3. Phipps appealed the findings, and Family Services scheduled a hearing for summer 2011. The Kentucky State Police also began an investigation of Phipps's behavior. As of March 2012, that investigation was still under way. *See* Travis Phipps Dep., R. 93-1 at 8 (invoking his right against self-incrimination because of an "ongoing open investigation" by the Kentucky State Police).

On October 26, 2011, the plaintiffs sued Travis Phipps, Donna Phipps, George Thompson, Patricia Howard, and John and Jane Doe employees of the Board—all in their individual and official capacities—as well as the Bell County Board of Education. Compl., R. 1. The complaint alleges nine claims, including violations of 42 U.S.C. §§ 1983 and 1985(3), Title IX, and accompanying state-law torts. *Id.* In March 2012, the Court dismissed the § 1985(3) claim against Donna Phipps and the official-capacity claims against Travis Phipps, Donna Phipps, and Patricia Howard. R. 84. The next month, the plaintiffs amended their complaint, adding a claim under 42 U.S.C. § 1983 against the members of the Board of Education in their individual capacities. R. 96. The amended complaint also alleged a state-law claim of negligent employment against the members of the Board. *Id.*

## DISCUSSION

The Board has moved for summary judgment on all five of the plaintiffs' claims against it: one claim under 42 U.S.C. § 1983 (Count 2); two civil conspiracy claims under 42 U.S.C. § 1985(3) (Counts 3 and 4); a claim under 20 U.S.C. § 1681, commonly called Title

3

IX (Count 5); and a state-law claim for negligent employment (Count 9). *See* R. 92. The Board is entitled to summary judgment on the plaintiffs' civil conspiracy and negligent employment claims, but not on the plaintiffs' § 1983 or Title IX claims.

## I. 42 U.S.C. § 1983 Claim

The plaintiffs allege that the Board violated A.K.'s Fourteenth Amendment right to be free from sexual abuse by a public school employee. R. 1 ¶ 69; *see also Doe v. Claiborne Cnty., Tenn.* ex rel. *Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996) ("If the right to bodily integrity means anything, it certainly encompasses the right not to be sexually assaulted under color of law.") (quotation marks omitted). Specifically, they assert a cause of action under 42 U.S.C. § 1983, which allows individuals to sue state actors who violate their constitutional rights.

Just like any individual, a local government entity like the Board can be liable under § 1983. But local governments are only responsible for "their *own* illegal acts." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (quoting *Pembauer v. Cincinnati*, 475 U.S. 469, 479 (1986)). They are not vicariously liable for the actions of their employees. *Id*. (citing *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). As a result, the plaintiffs must show that the Board violated A.K.'s constitutional rights by acting "pursuant to official municipal policy" or custom. *Id.* (quoting *Monell*, 436 U.S. at 691). The plaintiffs in this case have alleged that the Board followed a "policy or custom of indifference" towards misconduct in the Bell County school system. R. 93 at 7; *see also* Compl., R. 1 ¶ 69 (listing seven "unconstitutional customs or policies" of the Board, including "failing to properly refer School District employees' tortuous misconduct," "failing to adequately

4

supervise and train School District employees," "failing to effectuate adequate policies and procedures," and "manifesting indifferences towards incidents of sexual abuse").

These alleged "policies" have one thing in common: they all revolve around the Board's failure to act. In short, the plaintiffs have accused the Board of having a policy of not acting to halt the misconduct of employees like Phipps. A systematic failure to supervise or train state employees can amount to a policy or custom of "deliberate indifference" to constitutional violations that creates municipal liability under § 1983. *Savoie v. Martin*, 673 F.3d 488, 494-95 (6th Cir. 2012). The plaintiffs have two ways to prove the Board was deliberately indifferent to Phipps's actions. One is to show evidence of prior instances of similarly unconstitutional conduct by school district employees, thereby demonstrating that the Board knew that its policies were deficient and refused to act. *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (citing *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)); *see also Claiborne Cnty.*, 103 F.3d at 508 (requiring "the existence of a clear and persistent pattern of sexual abuse by school employees" coupled with "tacit approval" of that unconstitutional conduct). The other is to show a single violation of federal rights, accompanied by evidence that the Board failed to institute policies to deal with recurring situations that presented an obvious potential for that type of violation. *Plinton*, 540 F.3d at 464 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)); *see also City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989) (hypothesizing that a city's decision to arm its police officers, yet not train them when to use deadly force, would lead to an "obvious" risk of constitutional violations). Either route is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 131 S. Ct. at 1360 (quoting *Bryan Cnty.*, 520 U.S. at 410).

Here, either path to proving "deliberate indifference" presents an uphill climb for the plaintiffs. The plaintiffs have not yet shown that the Board was aware of instances in which Phipps engaged in sexual misconduct before his abuse of A.K. in 2003. They have also not yet shown that substitute teachers like Phipps presented the obvious potential for sexual abuse. But on both fronts, the plaintiffs are at least entitled to search for more proof. So far, the plaintiffs have uncovered evidence that there were at least five incidents of inappropriate sexual behavior between teachers and students in Bell County schools between 2004 and 2012. Thompson Dep., R. 93-4 at 137. They have also discovered that Thompson, the superintendent of the school system, knew in 2004 that Phipps brought a camera phone containing sexually explicit images to school. *See* R. 93-3 (letter from Thompson to Phipps reprimanding him for bringing inappropriate material on to school property).

Standing alone, the plaintiffs' evidence might not be enough to establish a genuine issue of material fact about whether the Board had an official policy or custom of permitting sexual abuse. But discovery in this case is not scheduled to end until October 15, 2012, and the plaintiffs have yet to depose several members of the Board. *See* R. 135 (canceling depositions of board members scheduled for May 24, 2012). Counsel for the plaintiffs has also submitted an affidavit under Federal Rule of Civil Procedure 56(d), seeking more time to conduct discovery before the Court rules on the Board's motion for summary judgment. R. 93-6. That affidavit explains that the plaintiffs are still conducting discovery into whether the Board had a "general policy of custom of indifference" regarding sexual abuse cases. *Id*. ¶ 5.

If further discovery shows that the Board repeatedly failed to address sexual misconduct by Bell County teachers or that the Board knew of the obvious potential for such

6

misconduct, the plaintiffs may yet be able to show a policy of deliberate indifference. *Cf. Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 753 (6th Cir. 2012) (overturning a district court's grant of summary judgment when the plaintiff had not yet had the opportunity to discover "critical elements of [his] claim"). Summary judgment is therefore not appropriate at this time on the plaintiffs' § 1983 claim. Of course, the Board may move for summary judgment again after the close of discovery if it still believes the plaintiffs have not shown the Board was deliberately indifferent to the sexual harassment of A.K.

## II. Conspiracy Claims Under 42 U.S.C. § 1985(3)

The plaintiffs also claim that the Board, along with Donna Phipps and George Thompson, conspired to deprive A.K. of his Fourteenth Amendment right to equal protection of the law. Specifically, they believe that the Board conspired with Donna Phipps to remove the personnel record of her son, Travis Phipps, from Frakes Elementary School, and that the Board conspired with Thompson to allow Travis Phipps to continue to teach in Bell County. Compl., R. 1 ¶¶ 72-79. To establish a civil conspiracy claim under 42 U.S.C. § 1985(3), the plaintiffs must show that (1) two or more persons conspired (2) for the purpose of depriving the plaintiffs of equal protection of the laws due to racial or class-based animus, and that the conspirators (3) committed an act in furtherance of the conspiracy that (4) injured the plaintiffs. *Maxwell v. Dodd*, 662 F.3d 418, 422 (6th Cir. 2011) (quoting 42 U.S.C. § 1985(3)).

In its previous Order, the Court dismissed the plaintiffs' § 1985(3) claim against Donna Phipps because the plaintiffs did not allege that the conspirators acted based on racial or class-based animus. R. 84 at 8. Their conspiracy claim against the Board shares the same fatal flaw. In their response to the Board's motion for summary judgment, the plaintiffs

7

appear to argue that the conspirators were motivated by gender-based animus. R. 93 at 13-14. Gender is indeed a cognizable class under § 1985(3), *see Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir. 1991), but the plaintiffs have not offered any direct or circumstantial evidence that gender motivated either conspiracy. Without evidence of a gender-based agreement between the defendants, the plaintiffs cannot maintain a § 1985(3) claim against the Board. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *cf. Maxwell*, 662 F.3d at 422 (holding that evidence of police officers' racially derogatory slurs was insufficient to support a § 1985(3) claim because the plaintiff had not "shown an agreement between the officers or that the point of any potential agreement was to deprive her of equal protection of the law due to her race").

Indeed, some of the very same evidence that the plaintiffs cite as support for their § 1983 claim against the Board undermines their § 1985(3) claim of gender-based animus. The plaintiffs point to the fact that Bell County teachers engaged in sexually inappropriate contact with students five times between 2004 and 2012, yet the Board did nothing to prevent Phipps from molesting A.K. R. 93 at 11. At least three of those incidents concerned female students. Thompson Dep., R. 93-4 at 134-36. If, as the plaintiffs allege, the Board blinded itself to sexual abuse in the Bell County schools, that willful indifference applied to male and female victims alike. And the plaintiffs are not entitled to more discovery on this issue because their Rule 56(d) affidavit does not state any particular facts they expect to uncover about gender-based animus in the remainder of discovery. In short, the plaintiffs have not shown any evidence of gender-based animus and they have not established that they may find more evidence later. As a result, they cannot prevail on a § 1985(3) claim against the Board.

**III. Title IX Claim**

The plaintiffs have also brought a claim under Title IX against the Board. Title IX prohibits sex discrimination in any federally funded education program. 20 U.S.C. § 1681(a). Courts have implied a private cause of action under the statute, allowing students to hold a federally funded school district liable when one of its employees sexually harasses a student. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281-84 (1998). The parties do not dispute that Bell County schools receive federal aid or that A.K. was harassed by Travis Phipps, a Bell County employee.

Harassment, however, is not enough to establish Title IX liability. A plaintiff must also show that an appropriate official of the educational institution had "actual notice" of the harassment and that the institution's response to that harassment amounted to "deliberate indifference." *Id.* at 289-91. The actual notice requirement allows a school official with "authority to address the alleged discrimination" the chance to "institute corrective measures" on the school's behalf. *Id.* at 290. Giving schools the "opportunity for voluntary compliance' with the statute avoids "diverting education funding from beneficial uses where a [school] was unaware of discrimination in its programs" and is willing to correct its behavior. *Id.* at 289. The second half of the Title IX requirement, "deliberate indifference," is similar to § 1983's requirement that a plaintiffs show an official policy or custom of indifference to constitutional violations. *Id.* at 291. As the Court explained with respect to the § 1983 claim, the plaintiffs may seek additional discovery into whether the Board has a policy or custom of deliberate indifference to sexual abuse. *See supra* Part II. For the same reasons, the plaintiffs are also entitled to further discovery to prove deliberate indifference for their Title IX claim.

Likewise, the plaintiffs still have the opportunity to establish whether an appropriate official received complaints about Travis Phipps. Sometimes, school officials' knowledge of multiple prior incidents of sexual misbehavior can create actual notice, even when no single incident is sufficiently serious. *See, e.g.*, *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1259 (11th Cir. 2010) (holding that a school board received actual notice of sexual harassment when multiple female students complained that a teacher touched them inappropriately). Prior incidents also do need not to involve the plaintiff in order to create actual notice. *See Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006) (holding that a school board can receive actual notice from complaints by other students without waiting "until it receives a clearly credible report of sexual abuse from the plaintiff-student") (quoting *Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 62 (D. Me. 1999)); *Bayard v. Malone*, 268 F.3d 228, 238 n.9 (4th Cir. 2001) ("We note that a Title IX plaintiff is not required to demonstrate actual knowledge that a particular student was being abused."). Thus, the question is whether prior complaints alerted a school official to a "substantial risk of sexual abuse to children in the school district." *Williams* ex rel. *Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 363 (6th Cir. 2005); *see also Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 260-61 (3d Cir. 2005) (upholding jury instructions that defined "actual notice" as when a school official has "knowledge of facts sufficiently indicating substantial danger to a student").

Thus far, discovery has shown that the former principal of Frakes Elementary School, Patricia Howard, received complaints about Phipps placing students on his lap the same year that A.K. was abused. Howard Dep., R. 93-2 at 71; Compl., R. 1 ¶ 26. As the principal of Frakes, Howard was an official who could take corrective action based on a complaint. *See*

*Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000) (concluding that a student satisfied the actual notice requirement by informing the school's principal about a teacher's sexual misconduct). Discovery has also established that the Board was aware of at least five other incidents of sexual abuse in Bell County schools. Thompson Dep., R. 93-4 at 137. Standing alone, this evidence might not be enough to establish actual notice. But it is at least enough to merit further exploration. As the Court previously noted, the plaintiffs have yet to depose several members of the Board, and counsel for the plaintiffs has submitted an affidavit stating that he expects to find more evidence of the Board's knowledge of sexual abuse. R. 93-6. Summary judgment is therefore also premature on the plaintiffs' Title IX claim.

**IV.   State Law Claim of Negligent Employment**

In its previous Order, the Court dismissed the plaintiffs' official-capacity state-law claims against Travis Phipps. R. 84 at 6-7. In his official capacity, Phipps is immune from suit. *Id.* The Board has now asked the Court to grant it summary judgment on the plaintiffs' state-law claim of negligent employment on the grounds that it, too, is immune. R. 92-1 at 1-2. The Board enjoys immunity from state-law claims when it engages in governmental, but not proprietary, functions. *Nelson Cnty. Bd. of Educ. v. Forte*, 337 S.W.3d 617, 621 (Ky. 2011) (citing *Yanero v. Davis*, 65 S.W.3d 510, 526 (Ky. 2001)). The Board may have failed the students and parents of Bell County by not immediately removing Phipps from the classroom, but supervising Phipps's employment was unquestionably related to the governmental function of operating a school system. *See, e.g.*, *Richardson v. Bd. of Educ. of Jefferson Cnty.*, No. 3:04-CV-386R, 2006 WL 2726777, at *9 (W.D. Ky. Sept. 22, 2006) (holding that a school district's investigation into an incident that occurred on school

property during school hours is a governmental function); *Smith v. Floyd Cnty. Bd. of Educ.*, 401 F. Supp. 2d 789, 801 (E.D. Ky. 2005) (holding that a school district's hiring and firing of its employees is a governmental function); *see also Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009) ("[A]ctivities in direct furtherance of education will be deemed governmental rather than proprietary.").

The plaintiffs admit that governmental immunity "may be fatal" to their state-law claim against the Board. R. 93 at 5. They nevertheless attempt to salvage their claim by citing *Savage v. Carter County Board of Education*, Ashland Civil No. 07-118-ART, 2009 WL 1884137 (E.D. Ky. June 30, 2009). In that case, the Court refused to grant summary judgment on a negligent supervision claim against a county school board. *See* 2009 WL 1884137, at *13. But the school board in *Savage* did not raise governmental immunity as a defense. *See id.* ("[T]he issue of whether a school board can be held vicariously liable in a judicial court for an employee's negligence . . . . is the only argument that has been advanced . . . ."). Immunity is an affirmative defense that the state may waive if it so chooses. *See Yanero*, 65 S.W.3d at 517. Here, unlike in *Savage*, the Board raised immunity as a defense. *See* R. 92-1 at 1-2. As a result, the plaintiffs may not proceed with their state-law claim of negligence against the Board. Of course, this ruling does not affect the plaintiffs' ability to proceed with negligent employment claims against the individual members of the Board. *See* Am. Compl., R. 96 ¶¶ 41-45.

## CONCLUSION

It is therefore **ORDERED** that the Board's motion for summary judgment, R. 92, is **GRANTED IN PART AND DENIED IN PART**. The Court **GRANTS** summary judgment to the Board on the plaintiffs' 42 U.S.C. § 1985(3) claims and state-law negligent employment claim (Counts 3, 4, and 9). The Court **DENIES** summary judgment to the Board on the plaintiffs' 42 U.S.C. § 1983 and Title IX claims (Counts 2 and 5).

This the 7th day of June, 2012.

Signed By:
*Amul R. Thapar* AT
United States District Judge